Corinne R. FORANT, Plaintiff,

v.

**CABOT CREAMERY COOPERATIVE, INC., Agri–Mark, Inc., and Marcel Gravel, Defendants.**

No. 2:97–CV–318.

United States District Court, D. Vermont.

Aug. 23, 1999.

Therese Mary Corsones, Corsones & Corsones, Rutland, VT, for plaintiff.

Karen McAndrew, Dinse, Knapp & McAndrew, P.C., Burlington, VT, John D. Hughes, Hutchins, Wheeler & Dittmar, P.C., Boston, MA, for defendants.

*OPINION AND ORDER*

SESSIONS, District Judge.

In this employment discrimination lawsuit alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Vermont Fair Employment Practices Act

("VFEPA"), and state tort claims, Defendants Cabot Creamery Cooperative, Inc., Agri–Mark, Inc. and Marcel Gravel have moved for summary judgment on Counts I through VI of the Verified Complaint, and have requested that the Court decline to exercise supplemental jurisdiction over the remaining four counts. For the reasons that follow, the Defendants' motion (paper 49) is granted.[1]

## FACTUAL BACKGROUND

The following facts are undisputed or are taken in the light most favorable to the nonmoving party. Corinne Forant began working for Cabot Creamery Cooperative, Inc. ("Cabot") in September 1994 as an administrative assistant to Marcel Gravel, Cabot's plant manager. Cabot is a wholly owned subsidiary of Agri–Mark, Inc. Gravel began working at Cabot in 1970 as a general worker, gained experience in all aspects of production, and became plant manager eight to ten years ago. Approximately one month after Forant began working for Cabot, Forant and Gravel began an affair. Both Forant and Gravel were married to others throughout this affair. In September 1995, Forant was promoted to cultured packaging supervisor.

On June 14, 1996 Forant's husband discovered the couple together. A fight ensued between Forant's husband and Gravel, in which Gravel sustained facial injuries. Forant jumped out of a second story window during the fracas, dislocating her hip and shoulder.

Gravel did not report to work following the incident. He told Cabot's senior vice president of operations that he had had a fight with Forant's husband. Gravel did not give an explanation for the fight, nor did he admit to an affair with Forant. As Gravel and Forant had agreed, Gravel said that they had been attending to Forant's

sick dog. Gravel told the same story to his direct supervisor.

Gravel indicated that he would not return to Cabot unless Forant was no longer working there. Forant indicated that she would prefer to report to a different supervisor than Gravel. After several meetings and discussions among Cabot's supervisory personnel, Forant was transferred to the administration building in the position of retail development supervisor on June 25, 1996. Gravel returned to his position as plant manager.

Forant received the same compensation in her new position, which was viewed by Cabot as a lateral transfer. Forant however was not pleased with the transfer, and felt she was being discriminated against because of her gender. She made this complaint to the senior vice president and the human resources manager.

Forant began work in her new position on July 1, 1996. She soon learned that her new job differed in significant respects from her old job. In her new position she did not have an office and supervised no employees, whereas in her old position she had a private office and supervised fifteen to twenty employees. Although Forant was new to marketing, she received very little training or guidance.

Terri Schoolcraft and Roberta MacDonald were Forant's new supervisors. On August 16, 1996, Forant had a meeting with Schoolcraft. While Forant was alone in Schoolcraft's office she saw a document on Schoolcraft's desk which tracked Forant's time. Forant removed the paper and photocopied it, returning it to Schoolcraft's desk. Forant left a message for MacDonald, informing her that she had seen this document, and that she feared she was being set up for termination. MacDonald told Forant to discuss the document with Schoolcraft. MacDonald also spoke with Schoolcraft and Cabot's chief executive officer, Richard Stammer. They concluded

---

1. The Defendants have requested oral argument on their motion, pursuant to Local Rule 7.1(a)(7). In the exercise of its discretion, the parties having ably presented their positions in their memoranda, the Court denies the request.

that Forant could not remain in a position where she had access to confidential information.

On August 20, 1996, at a meeting between MacDonald and Forant, Forant disclosed the affair between herself and Gravel, and the truth of the June 14 incident. On August 21 Forant met with MacDonald and Stammer. Stammer told Forant she was terminated from her position as retail development supervisor because she was untrustworthy, and MacDonald did not feel she could work with her. Forant was told that if she wanted to stay at Cabot she would have to accept a lower paying position with greater supervision. Upon Forant's informing Cabot that she had a job opportunity elsewhere that would start November 1, Cabot continued her current salary to that date, whereupon she was terminated.

Eventually Gravel admitted that he had lied about his relationship with Forant. Cabot asserts that Gravel was disciplined for his misconduct.

On June 9, 1997, Forant filed a complaint of discrimination and request for investigation against Cabot with the Equal Employment Opportunity Commission. On June 30, 1997, Forant received her right to sue letter from the EEOC.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. *Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's, London England,* 136 F.3d 82, 86 (2d Cir.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). A party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

## DISCUSSION

### I. Gender-based Discrimination: Title VII and VFEPA

■ In order to establish her prima facie case of gender discrimination under Title VII or the VFEPA, Forant must show (1) that she is female; (2) that she was qualified for the position; (3) that Cabot discharged her or otherwise took adverse employment action; and (4) that the circumstances under which the negative employment action took place give rise to an inference of discrimination. *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1239 (2d Cir.1995) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 and n. 13, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 253–54 and n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Once a prima facie case is established, the burden then shifts to the employer, who must offer a legitimate, nondiscriminatory reason for its actions. *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 63 (2d Cir.1997). If the employer successfully articulates such a reason, the burden returns and remains with the plaintiff to show that the proffered reason is merely a pretext for discrimination. *Id.*

The Defendants challenge the sufficiency of Forant's evidence on the fourth element of her prima facie case. They also assert that Cabot has offered a legitimate nondiscriminatory reason for its actions, which Forant has failed to rebut.

■ Forant may satisfy her prima facie burden by offering evidence that "she was treated less favorably than comparable male employees in circumstances from which a gender-based motive could be inferred." *Luciano v. Olsten Corp.,* 110 F.3d 210, 215 (2d Cir.1997). Although a plaintiff's burden at this stage is not oner-

ous, *id.*, it must nonetheless be met. This Forant has failed to do.

■ Assuming that the transfer was a negative employment action, Forant has supplied no evidence that she was treated less favorably than similarly situated male employees. The information available to Cabot at the time of Forant's transfer was that Gravel and her husband had had a fight, that Gravel was on the verge of resigning, and that Forant wanted to report to a different supervisor. Forant argues that she and Gravel were similarly situated, but that she was transferred and he was not. Her contention that she and Gravel were similarly situated is without merit. To satisfy the fourth element, the individuals to be compared "must be similarly situated in all material respects." *Shumway*, 118 F.3d at 64. Forant was a subordinate with two years of experience; Gravel was a plant manager with more than twenty-five years at the company and several years in his current position. Even had Cabot known of the affair at the time Forant was transferred, the fact that it transferred the employee with less experience, less longevity and less value to the company does not give rise to an inference of gender discrimination.

■ With respect to her termination, Forant has argued that she and Gravel were similarly situated in their "untrustworthiness," she for the surreptitious removal and copying of the document, he for the lies to his superiors about the affair, but that she was fired and he received bonuses and an increase in pay. Again, Forant has failed to show that she and Gravel were similarly situated.

> Employees are not "similarly situated" merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiat-

> ing or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.

*Mazzella v. RCA Global Communications, Inc.*, 642 F.Supp. 1531, 1547 (S.D.N.Y. 1986), *aff'd* 814 F.2d 653 (1987). That Gravel and Forant both engaged in conduct which demonstrated "untrustworthiness" is not the point. The difference in their years of service, their positions within the company, and their misconduct offer no basis for comparison, despite their mutual involvement in an affair.

■ Even were Forant able to establish a prima facie case, however, the Defendants would be entitled to summary judgment because she has not established pretext. Cabot articulated legitimate nondiscriminatory reasons for Forant's transfer—to eliminate potential friction between Gravel and the Forants; and for Forant's termination—the filching of her supervisor's document. As the Second Circuit has observed, "the reasons tendered need not be well-advised, but merely truthful," and nondiscriminatory. *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir.1988). A plaintiff may then prevail "upon a showing that the employer's given legitimate reason is unworthy of credence, that the reason supplied was not the true reason for the unfavorable employment decision." *Id.* at 1113. An examination of the record evidence to date fails to reveal any facts from which a jury could conclude that Cabot's reasons for transferring or discharging Forant were unworthy of credence.

Because Forant has failed to establish a prima facie case of employment discrimination or to rebut the legitimate nondiscriminatory reasons for Cabot's actions, her Title VII and VFEPA claims in Counts I, III, IV and VI are dismissed.

## II. *Retaliation Claims: Title VII and VFEPA*

■ To present a prima facie case of retaliation, Forant must show that she was

engaged in protected activity; that Cabot was aware of that activity; that she suffered adverse employment decisions; and that there was a causal connection between the protected activity and the adverse employment actions. *Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988). *See also Galdieri–Ambrosini v. National Realty & Dev. Corp.,* 136 F.3d 276, 292 (2d Cir.1998).

As the Defendants concede, reporting gender discrimination is protected activity under either Title VII or the VFEPA. They also do not contest, for purposes of this motion, that Forant suffered adverse employment decisions in her transfer as well as her termination. They assert that the individuals responsible for her termination were unaware of her claims of gender discrimination, and they dispute any causal connection between her complaints of gender discrimination and any adverse employment actions.

The causal connection element of a prima facie case of retaliation may be "established either indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant." *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1991) (internal quotation omitted).

Upon examination of the record to date, the Court is unable to discern any evidence from which a jury could find a causal connection between Forant's transfer or her termination and any complaint of gender discrimination. According to Forant, she complained of gender discrimination after she learned of the decision to transfer her. She cannot therefore have been transferred in retaliation for her complaints. Forant's termination took place some two months later. The protected activity was thus not followed closely by her discharge. She has offered no evidence of disparate treatment of fellow

employees engaged in similar protected conduct. Nor is there direct evidence of retaliatory animus; the record does not even reflect that those responsible for firing Forant knew that she had complained of gender discrimination. Moreover, Defendants have articulated a legitimate nondiscriminatory reason for Forant's termination, as discussed above.

Because Forant has failed to establish a prima facie case of retaliation under Title VII or the VFEPA, or to rebut the legitimate nondiscriminatory reasons for Cabot's actions, Counts II and V are dismissed.

### III. *Supplemental Jurisdiction*

The federal claims in this lawsuit having been dismissed, the Court hereby declines to exercise supplemental jurisdiction over the remaining state law claims in Counts VII, VIII, IX and X, pursuant to 28 U.S.C. § 1367(c)(3). *Seabrook v. Jacobson,* 153 F.3d 70, 72 (2d Cir.1998); *Morse v. University of Vt.,* 973 F.2d 122, 127–28 (2d Cir.1992).

### *CONCLUSION*

For the reasons stated above, the Defendants' Motion for Summary Judgment (paper 49) is GRANTED.